# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| LAYNE FRANKLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-1334 |
| | ) |
| JENNIFER WALTHALL, in her official capacity as the Secretary of the Family and Social Services Administration; | ) ) ) |
| KYLEE HOPE, in her official capacity as Director of the Division of Disability and Rehabilitative Services; | ) ) |
| THERESA KOLESZAR, in her official capacity as Director of the Bureau of Rehabilitation Services and Vocational Rehabilitation Services, | ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR JUDICIAL REVIEW

Layne Franklin ("Ms. Franklin"), by counsel, respectfully files this Complaint against Defendants the Indiana Family and Social Services Administration ("FSSA") through its Secretary, Dr. Jennifer Walthall, in her official capacity; the Division of Disability and Rehabilitative Services ("DDRS") through its Director, Kylee Hope, in her official capacity; and the Bureau of Rehabilitation Services ("BRS") and Vocational Rehabilitation Services ("VRS"), through their Director, Theresa Koleszar, in her official capacity, (collectively, "Defendants"), and in support thereof states:

### I. INTRODUCTION

1. This case involves the efforts of Ms. Franklin, a person with autism, to receive adequate support for postsecondary supports and services from Indiana's state vocational rehabilitation agency, VRS, and to prepare for competitive, integrated employment.

2. As the designated vocational rehabilitation agency for Indiana, VRS is charged with determining, on an individualized basis, together with the eligible participant, what vocational rehabilitation services will enable the participant to achieve competitive, integrated employment.

3. Because students with profound learning disabilities, including some students on the autism spectrum, often require more tailored supports than are available through the University of Indianapolis' Office of Services for Students with Disabilities, the school developed the Baccalaureate for the University of Indianapolis Learning Disabled ("BUILD") program.

4. The BUILD program offers a variety of unique supports and services to participating University of Indianapolis students, including one-on-one tutoring, walk-in tutoring, an autism social skills group and activities, testing accommodations, a private study area, and personalized counseling regarding classes and career planning. Moreover, the program's approximately 20 tutors have each earned at least a bachelor's degree in their area of expertise, as well as completed a curriculum on serving students with learning disabilities.

5. No other postsecondary institution in Indiana offers students with profound learning disabilities a similar selection of intensive and structured programming.

6. While postsecondary training is a vocational rehabilitation service available to other participants, VRS has effectively prohibited BUILD participants from receiving postsecondary training through the imposition of a postsecondary fee schedule that limits postsecondary tuition support to the amounts charged by Indiana's public colleges. The University of Indianapolis, a private college, charges a higher rate of tuition. Because enrollment at the University of Indianapolis is a prerequisite for participating in its BUILD program, VRS's refusal to fully support postsecondary training at private colleges prohibits participation in the BUILD program.

7. Ms. Franklin applied to VRS her senior year of high school, and was found eligible for services. She expressed an interest in a public health-related career, as well as attending college. Ms. Franklin's VR counselor at the time agreed with these goals, but noted that Ms. Franklin would need to participate in the BUILD program to successfully complete postsecondary training.

8. During her freshman year at the University of Indianapolis, VRS fully supported Ms. Franklin's postsecondary training, room and board, and BUILD program tuition. Thereafter, VRS adopted a postsecondary fee schedule and began reducing the amount of Ms. Franklin's postsecondary support.

9. Ms. Franklin requested that VRS grant her an exception to its postsecondary fee schedule. VRS has denied her requests several times, most recently in October 2018.

10. On October 3, 2018, Ms. Franklin learned that VRS only authorized her $698 in postsecondary support for the Fall 2018 semester, in addition to BUILD program tuition.

11. Ms. Franklin appealed Defendants' postsecondary funding determination since the authorized amount was insufficient. Pursuant to 29 U.S.C. § 722(c)(5), a fair hearing was held on December 13, 2018. A decision was issued on January 18, 2019, in favor of Ms. Franklin. VRS was ordered to recalculate Ms. Franklin's postsecondary support allocation without use its postsecondary fee schedule. VRS was also ordered to provide full support for Ms. Franklin's room and board.

12. VRS appealed the administrative hearing decision on January 31, 2019. Ms. Franklin submitted a memorandum of law in support of the administrative law judge's Order on February 18, 2019.

13. On March 4, 2019, prior to DDRS' filing a response to Ms. Franklin's memorandum of law in support, DDRS Director Kylee Hope issued a Notice of Final Agency

Action reversing the administrative law judge's Order regarding postsecondary support. This Notice also reversed and effectively remanded the Order's direction regarding room and board support.

14. Ms. Franklin files this civil action for judicial review of DDRS's final agency action pursuant to 29 U.S.C. § 722(c)(5)(J) and relief under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## II. JURISDICTION AND VENUE

15. This cause of action is found at 29 U.S.C. § 722(c)(5)(J), which allows for a civil action to be filed without regard to the amount in controversy.

16. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, regarding general federal question jurisdiction, as Plaintiff's claims arise under a federal statute, the Rehabilitation Act of 1973.

17. Venue is proper in this judicial district under 28 U.S.C. § 1391 as all parties reside and conduct business in this district. Further, all relevant events took place here.

## III. PARTIES

18. The Plaintiff, Layne Franklin, permanently resides in Columbus, Indiana, and lives on-campus during the school year at the University of Indianapolis, in Indianapolis, Indiana. Both cities are located within the Southern District of Indiana.

19. Defendants FSSA, DDRS, BRS, and VRS are each located and headquartered in Indianapolis, Indiana.

20. Defendants Jennifer Walthall, Kylee Hope, and Theresa Koleszar, in their official capacities, are the executive agents of their respective agencies and acted within the scope of their actual or apparent authority at all times throughout the events of this case. Each of these agencies

is located in Indianapolis, Indiana. Secretary Walthall and Directors Hope and Koleszar each also maintain an office in Indianapolis, Indiana.

## IV. FACTS

21. The agency record, which must be filed with this Court, pursuant to 29 U.S.C. § 722(c)(5)(J), is hereby incorporated by reference.

### A. Background

22. Ms. Franklin has been diagnosed with Autism Spectrum Disorder, which significantly limits her ability to communicate, think, concentrate, and learn.

23. Ms. Franklin attended Franklin Central High School, where she was educated, per the guidance of an individualized education plan ("IEP") under the Individuals with Disabilities Education Act ("IDEA").

24. Ms. Franklin graduated with her high school diploma in May 2015.

25. As required by the IDEA, during her senior year of high school, Ms. Franklin, her parents, and school district officials began planning to prepare a transition IEP detailing Ms. Franklin's goals following high school and the services she would need to achieve them.

26. Ms. Franklin's goal was to obtain competitive, integrated employment, to support herself and live independently in the community. As part of the transition process, Ms. Franklin explored her career options.

27. Prior to entering college, Ms. Franklin discovered her interest in the field of occupational therapy. After some consideration, she decided to pursue a career as a therapist's assistant.

28. Ultimately, Ms. Franklin, her parents, and school district officials all agreed that Ms. Franklin needed postsecondary training following high school graduation to achieve her employment goal.

29. Because Ms. Franklin intended to pursue competitive, integrated employment, she was referred to VRS for vocational rehabilitation services.

## B. Vocational Rehabilitation

30. The purpose of the Rehabilitation Act, as set forth in 29 U.S.C. § 701, *et seq.*, is to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, inclusion, and societal integration.

31. To prepare individuals with disabilities for competitive, integrated employment, the Rehabilitation Act established a comprehensive vocational rehabilitation program, providing federal funding to states for the purpose of assessing, planning, developing, and providing vocational rehabilitation services to individuals with disabilities, consistent with their unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice. State participation in the federal vocational rehabilitation program is voluntary, but those participating must comply with federal law, per Section 720 of the Rehabilitation Act.

32. DDRS is Indiana's designated state agency for providing vocational rehabilitation services to people with disabilities pursuant to the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

33. BRS is the designated state unit in Indiana that provides vocational rehabilitation services to people with disabilities pursuant to the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

34. VRS is the BRS division that provides rehabilitation services to individuals like the Plaintiff.

35. Once an individual has been found eligible for services, an individualized plan for employment ("IPE") must be developed and implemented in a timely manner. 34 C.F.R. § 361.45(a)(1).

36. The IPE must contain ". . . a description of the specific employment outcome that is chosen by the eligible individual," and "a description of the specific vocational rehabilitation services that are . . . needed to achieve the employment outcome." 29 U.S.C. §722(b)(4)(A)-(B).

37. Vocational rehabilitation services provided under 29 U.S.C. § 720, *et seq.*, "are any services described in the individualized plan for employment necessary to assist an individual with a disability in preparing for, securing, retaining, or regaining an employment outcome . . ." 29 U.S.C. § 723(a)(1).

38. Additionally, an IPE "shall be developed and implemented in a manner that affords eligible individuals the opportunity to exercise informed choice in selecting an employment outcome, the specific vocational rehabilitation services to be provided under the plan, the entity that will provide the vocational rehabilitation services, and the methods used to procure the services . . . ." 29 U.S.C. § 722(b)(3)(B).

39. Federal regulations require that:

> As appropriate to the vocational rehabilitation needs of each individual and consistent with each individual's individualized plan for employment, the designated State unit must ensure that the following vocational rehabilitation services are available to assist the individual with a disability in preparing for, securing, retaining, advancing in, or regaining an employment outcome that is consistent with the individual's unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice:
> . . .
> (3) Vocational rehabilitation and guidance, including information and support services in accordance with § 361.52.
> . . .
> (6) Vocational and other training services, including personal and vocational adjustment training, advanced training in, but not limited to, a field of science,

>technology, engineering, mathematics (including computer science), medicine, law, or business; books, tools, and other training materials . . .
>(7) Maintenance, in accordance with the definition of that term in § 361.5(c)(34).

34 C.F.R. § 361.48(b).

40. VRS provides postsecondary training required for an eligible individual to pursue his or her employment outcome, including, but not limited to, "assistance needed to obtain: (1), an academic degree; (2) a vocational skills certificate; (3) selected course work necessary to develop, update, or improve specific occupational skills and competencies; or (4) industry-recognized licensing, certification, or . . . credentialing." 460 Ind. Admin. Code 14-18-1(a).

41. A VRS participant pursuing training "must attend the lowest-cost provider . . .that meets his or her vocational rehabilitation needs and is appropriate to the employment outcome specified in the eligible individual's IPE." 460 Ind. Admin. Code 14-18-3(a).

42. Pursuant to 460 Ind. Admin. Code 14-18-4(a), VRS "may pay the lesser of the following documented postsecondary education expenses: (1) The published fees and tuition costs of the training institution or program attended [or] (2) [t]he fees established by the VR program."

43. The VRS fee schedule referenced in 460 IAC 14-18-4(a)(2), that traditionally distinguishes a maximum support amount for tuition, room and board, and books, is published online. *See* Information Regarding Postsecondary Training Services for 2018-2019 Academic School Year, Vocational Rehabilitation Services, available at: www.in.gov/fssa/informationregardingleastcostratesforpostsecondarytrainingservices.pdf (last visited: Apr. 2, 2019).

44. Maintenance services are defined as: "[M]onetary support provided to an individual for expenses, such as food, shelter, and clothing, that are in excess of the normal expenses of the

individual and that are necessitated by . . . the individual's receipt of vocational services under an individualized plan for employment." 34 C.F.R. § 361.5(c)(34).

45. In providing services to participants, "[t]he designated State unit may not apply a financial needs test, or require the financial participation of the individual . . . [a]s a condition for furnishing any vocational rehabilitation service if the individual in need of the service has been determined eligible for Social Security benefits . . . ." 34 C.F.R. § 361.54(b)(3).

### C. Application for Vocational Rehabilitation Services

46. In her final year of high school, Ms. Franklin applied for vocational rehabilitation services. She was found eligible to participate in the VRS program on December 16, 2014. She was categorized as "Most Severely Disabled" due to her demonstrated functional limitations in the areas of communication, interpersonal skills, and work skills. (Plaintiff's Ex. 1 and 2.)[1]

47. After Ms. Franklin was deemed eligible for services, VRS inquired of the Social Security Administration as to Ms. Franklin's status as a beneficiary. VRS received confirmation that Ms. Franklin is a beneficiary of Supplemental Security Income. (Plaintiff's Ex. 27.)

48. Ms. Franklin's case was assigned to a vocational rehabilitation counselor, Anna Barrett, who began a comprehensive assessment to determine Ms. Franklin's vocational rehabilitation needs. Ms. Barrett gathered information from Ms. Franklin and her parents, Ms. Franklin's high school IEP, and staff from the BUILD program.

49. Ms. Franklin and VRS deemed the University of Indianapolis and its BUILD program as necessary for Ms. Franklin's vocational success. Specifically, VRS, through Barrett, concluded that it needed to provide "assistance with [the] BUILD program in order to achieve [Ms. Franklin's] vocational goal." (Plaintiff's Ex. 4.) VRS further acknowledged that, to participate in

---

[1] Exhibits referenced in this complaint are contained within and identified as they appear in the administrative record that will be filed with this Court pursuant to 29 U.S.C. § 722(c)(5)(J).

the BUILD program, students must attend the University of Indianapolis and reside on campus. (Plaintiff's Ex. 4.)

50. VRS authorized $7,555 per semester, in addition to the fee for the BUILD program, to help Ms. Franklin meet postsecondary expenses that were not covered by grants and scholarships.

51. With VRS's support, Ms. Franklin began to thrive in college.

52. Then, during Labor Day weekend in 2017, Ms. Franklin received notification from her new vocational rehabilitation counselor, Eric Elkins, that VRS was reducing her postsecondary support authorization to $1,111 per semester, in addition to the fee for the BUILD program. This amount did not cover the gap between Ms. Franklin's actual postsecondary expenses and her grants and scholarships. Ms. Franklin appealed VRS's determination and requested that her case be transferred to a new vocational rehabilitation counselor.

53. In January 2018, following an administrative decision in her favor, Ms. Franklin's case was transferred to vocational rehabilitation counselor Noel "Jason" Resler.

54. Following the Spring 2018 semester, Ms. Franklin decided to change her employment outcome from a therapy assistant to a community health worker. Her IPE was amended to reflect this change.

### D. Postsecondary Support for the 2018-2019 Academic Year

55. Ms. Franklin's IPE addressing VRS services for the Fall 2018 semester was amended and signed by Ms. Franklin and VRS Counselor Noel "Jason" Resler in August 2018. Ms. Franklin's planned employment outcome is "Community Health Workers" [sic]. In pursuance of that outcome, Ms. Franklin and VRS agreed that the following services are necessary: VR counseling and guidance, provided by VRS; "4 yr of college tuition," "on campus college

residential," "4 yr ancillary fee," "4 yr books," and "4 yr supplies," provided through the University of Indianapolis; the BUILD program, provided through the University of Indianapolis; tutoring, provided by Schilling Tutoring; driver's training, provided by Crossroads Rehabilitation Center; personal adjustment training, provided through Hands in Autism and Indiana University Purdue University at Indianapolis; and other therapy, provided by Positive Pathways. (Plaintiff's Ex. 8.)

56. Ms. Franklin was concerned that VRS would continue providing an insufficient amount of postsecondary support, jeopardizing her ability to continue her education. On September 10, 2018, Ms. Franklin submitted a request for an exception to VRS's postsecondary fee schedule for the 2018-2019 academic year.[2] (Plaintiff's Ex. 9.)

57. On October 3, 2018, Mr. Resler informed Ms. Franklin's advocate, Bonnie Bomer, that VRS would be authorizing only $698 per semester for postsecondary support during the Fall 2018 semester. (Plaintiff's Ex. 12.)

58. VRS also authorized an additional $3,382 for the Fall 2018 semester. That additional sum represents Ms. Franklin's BUILD program fees for the semester. VRS has always fully funded Ms. Franklin's BUILD program fees. (Plaintiff's Ex. 4.)

59. On October 23, 2018, VRS Area Supervisor Jan DesRoches notified Ms. Franklin that her exception request was denied. (Plaintiff's Ex. 16.)

60. Undergraduate tuition for a full-time student at the University of Indianapolis for the 2018-2019 school year is $28,836. *See* University of Indianapolis, *Estimating Your Costs*, available at: http://www.uindy.edu/financial-aid-for-new-students/how-much-will-it-cost-to-

---

[2] Ms. Franklin submitted a previous exception request to VRS on July 18, 2018. However, Mr. Resler refused to process the request because Ms. Franklin's IPE had not yet been updated to reflect her Community Health Worker employment goal. (Plaintiff's Ex. 5 and 6.)

11

attend (last accessed: Sept. 9, 2018). Room and board is an additional $10,288 for the 2018-2019 school year. *Id.*

### E. Appeal and Agency Review

61. Ms. Franklin appealed VRS's postsecondary funding allocation on October 23, 2018. (Plaintiff's Ex. 20.)

62. An administrative hearing was conducted on December 13, 2018. Ms. Franklin argued, first, that her appeal was timely, in response to timeliness questions raised by Defendants. Next, she asserted VRS violated her rights by imposing a fee schedule that violates federal law. As applied, VRS's postsecondary fee schedule effectively denies Ms. Franklin a necessary service, as well as places absolute dollar limits on services categories. Ms. Franklin also maintained that VRS unlawfully: refused to authorize support for room and board; required her to participate in cost-sharing, despite her status as a beneficiary of Supplemental Security Insurance; and undermined her informed choice.

63. On January 18, 2019, Administrative Law Judge Wendy Messer issued her Order. First, she found that Ms. Franklin's appeal was timely filed. *See* Notice of Final Order.[3] The Order also determined that VRS inappropriately calculated Ms. Franklin's postsecondary services. Administrative Law Judge Messer ordered VRS to recalculate Ms. Franklin's postsecondary support without application of its postsecondary fee schedule. She further ordered VRS to include Ms. Franklin's actual room and board expenses into this calculation.

---

[3] References to exhibits by title rather than number refer to components of the administrative record that will be filed with this Court pursuant to 29 U.S.C. § 722(c)(5)(J). Because FSSA will not prepare the administrative record until it receives proof that a petition for judicial review has been filed, the Plaintiff cannot currently refer to these exhibits by number.

64. On January 31, 2019, VRS submitted a Request for Administrative Review. *See* Request for Administrative Review. Ms. Franklin responded with a Memorandum opposing the reversal of ALJ Messer's decision.

65. Director Hope, as the ultimate authority, issued her Notice of Final Agency Decision on March 4, 2019.

## V. Claims

### A. COUNT ONE

66. Plaintiff incorporates by reference the statements contained in the previous paragraphs.

67. VRS's determination to provide Ms. Franklin inadequate support for postsecondary training, and Director Hope's decision upholding that determination, are contrary to the Rehabilitation Act, and should be overturned.

68. Federal law requires that the reviewing official not overturn or modify an administrative law judge's decision, or any part thereof, unless he or she determines, by clear and convincing evidence, that the administrative law judge's opinion is "clearly erroneous on the basis of being contrary to the approved State plan, this chapter (including regulations implementing this chapter) or any state regulation, or policy that is consistent with the Federal requirements specified in this subchapter . . . ." 29 U.S.C. § 722(c)(5)(F)(ii).

69. VRS's Fall 2018 postsecondary service allocation violated the Rehabilitation Act and its implementing regulations:

> (a) VRS failed to make available to Ms. Franklin vocational rehabilitation services to assist her in preparing for, securing, or retaining an employment outcome consistent with her strengths, resources, priorities, concerns, abilities,

capabilities, interests, and informed choice, specifically vocational rehabilitation counseling and guidance, vocational and other training services, and maintenance services, as required by 34 C.F.R. § 361.48(b)(3), (6), and (7).

(b)     VRS failed to afford Ms. Franklin the opportunity to exercise informed choice in selecting an employment outcome, the specific vocational rehabilitation services to be provided under the plan, the entity that will provide the vocational rehabilitation services, and the methods used to procure the services, as required by 29 U.S.C. § 722(b)(3)(B).

(c)     VRS rejected the conclusions of Ms. Franklin, her mother, her behavioral therapist, her advocate, and its own vocational rehabilitation counselors, in that Ms. Franklin needs to continue participating in the BUILD program to obtain her bachelor's degree, without reliable, probative, or substantial evidence to support their determination, in violation of 34 C.F.R. § 361.48.

(d)     VRS denied Ms. Franklin necessary vocational rehabilitation services pursuant to a substantive policy regarding the nature and scope of vocational rehabilitation services, which was developed without public participation, as required by 34 C.F.R. § 361.20. Additionally, certain policies, such as the new standards regarding the provision of room and board services, are not clearly defined and maintained in writing, in violation of 34 C.F.R. § 361.50(a).

(e)     VRS denied Ms. Franklin necessary vocational rehabilitation services pursuant to a policy which set an arbitrary limit on the nature and scope of vocational rehabilitation services, including postsecondary training, in violation of 34 C.F.R. § 361.50(a).

(f) VRS denied Ms. Franklin necessary vocational rehabilitation services pursuant to a policy which failed to ensure that the provision of services is based on the rehabilitation needs of each individual consistent with informed choice, as required by 34 C.F.R. § 361.50(a).

(g) VRS placed absolute limits on services categories, including postsecondary supports and room and board, which resulted in Ms. Franklin being denied necessary vocational rehabilitation services, in violation of 34 C.F.R. § 361.50(c).

(h) VRS required Ms. Franklin to participate in cost-sharing for services, despite Ms. Franklin's status as a beneficiary of Supplemental Security Insurance, in violation of 34 C.F.R. § 361.54(c)(3)(ii).

(i) VRS lacks a meaningful process to request exemptions to service limits, as demonstrated by its denial of Ms. Franklin's request for an exception to its 2018-2019 postsecondary fee schedule based upon the unfounded conclusion that Ms. Franklin does not have a disability-related need for an exception, in violation of 34 C.F.R. § 361.50(c) and 460 Ind. Admin. Code § 14-11-3(b).

70. The decision of Director Hope, reversing the administrative law judge's Order, did not follow the Rehabilitation Act and its implementing regulations:

(a) Director Hope issued her decision without sufficient explanation and supporting facts, in violation of 34 C.F.R. § 361.57(g)(3)(iii).

(b) It is not clear that Director Hope reviewed the entire hearing record prior to issuing her decision, in violation of 34 C.F.R. § 361.57(g)(3)(iii).

  (c)  Director Hope erred by overturning or modifying the administrative law judge's Order without clearing convincing evidence that it was contrary to the law, in violation of 34 C.F.R. § 361.57(g)(3)(ii).

71. Accordingly, Defendants failed to follow the procedures of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and its implementing regulations, in providing vocational rehabilitation services to Ms. Franklin, which has caused Ms. Franklin harm.

### B. COUNT TWO

72. Plaintiff incorporates by reference the statements contained in the previous paragraphs.

73. Ms. Franklin as a person with a disability, within the meaning of 29 U.S.C. § 705, is qualified to benefit from the vocational rehabilitation services provided by Defendants.

74. Ms. Franklin's disabilities limit her in several major life activities, including, but not limited to: communication, thinking, concentrating, and learning.

75. Federal regulations enforcing Section 504 specifically state:

A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

(i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others;

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons, unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others . . . .

34 C.F.R. § 104.4(b).

76. As a recipient of federal funds, VRS is subject to the non-discrimination mandate of Section 504.

77. Defendants' decision to deny adequate postsecondary support for Ms. Franklin's postsecondary training violated the Rehabilitation Act and its implementing regulations:

> (a) While postsecondary training remains an option for VRS participants who can attend public schools, VRS has effectively denied Ms. Franklin and other individuals with profound learning disabilities the opportunity to receive necessary postsecondary training services, in violation of 34 C.F.R. § 104.4(b)(i)-(iv).
>
> (b) Defendants have intentionally denied Ms. Franklin necessary postsecondary training services on the basis of financial concerns, rather than Ms. Franklin's vocational needs, as consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, in violation of 34 C.F.R. § 104.4(b)(i)-(iv).

78. As a result of Defendants' conduct and violations of Section 504, Ms. Franklin has not only suffered from the loss of access to complete vocational rehabilitation services, but has also suffered psychological harm from the disruption to and uncertainty in her educational and vocational pursuits.

### VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests this Court to:

A. Reverse Director Hope's Notice of Final Agency Decision, and reinstate the order of the Administrative Law Judge from the underling administrative action.

      B.      Order VRS to implement Ms. Franklin's IPE, which includes postsecondary services at the University of Indianapolis and its BUILD program, books, supplies, ancillary fees, and room and board.

      C.      Declare that VRS's 2018-2019 postsecondary fee schedule violates the Rehabilitation Act of 1973, as amended.

      D.      Award reasonable attorneys' fees and costs; and.

      E.      Award any other relief deemed just by the Court.

Respectfully submitted,

s/ *Nikki G. Gray*
Nikki G. Gray, 31209-49
Indiana Disability Rights
4701 North Keystone Ave., Suite 222
Indianapolis, IN 46205
Telephone:   (317) 722-3445
Fax:   (317) 722-5564
ngray@indianadisabilityrights.org

Counsel for the Plaintiff